JAMES B. GREENE *v.* ARTHUR HELME ET AL.

January Term, 1920.

Present: WATSON, C. J., POWERS, TAYLOR, MILES, and SLACK, JJ.

Opinion filed October 5, 1920.

</div>

*Deeds—Exception in Deed to Be Interpreted in Connection with Purpose of Parties and Nature and Condition of Subject-matter—Meaning of Exception Question of Law—Meaning Cannot Be Altered by Evidence of Extraneous Circumstances—Exception of "Avenues" Did Not Cover Woodland Trail.*

1.  Where there is no latent ambiguity in a deed, the language of a so-called reservation, which is in contemplation of law an exception, is to be interpreted in connection with and in reference to the purpose of the parties and the nature and condition of the subject-matter at the time the deed was executed.

2.  The meaning of such a reservation is a question of law, and the intent cannot be altered by evidence or findings of extraneous circumstances, but the understanding of the parties must be deemed to be what the instrument so interpreted declares.

3. A reservation in a deed of the right to maintain all existing avenues on the conveyed premises at a uniform width of fifty feet, the center line always to remain midway between the lines of shade trees along said avenues as they then existed, did not reserve any rights over an irregular woodland trail in its natural state.

APPEAL IN CHANCERY. Bill for an injunction restraining the defendants from interfering with the plaintiff in the use of a certain roadway. Heard on the bill, answer, replication, and facts found by the Chancellor at the September Term, 1917, Rutland County, *Wilson*, Chancellor. Decree for the defendants dismissing the bill with costs. The plaintiff appealed. The opinion states the case.

*John S. Dorsey* and *Walter S. Fenton* for the plaintiff.

*M. C. Webber* and *B. L. Stafford* for the defendants.

TAYLOR, J. The plaintiff brought this bill for an injunction to restrain the defendants from interfering with his use of a certain roadway in which he claims to have rights. A temporary injunction was granted, and, the issues having been framed, a trial was had before the chancellor, who filed findings of fact. The plaintiff filed exceptions to the findings, which were overruled, and a decree was entered dismissing the bill. The case is here on plaintiff's appeal.

Such rights, if any, as the plaintiff has in the roadway in question, depend upon the construction and application of a certain clause in a deed from J. J. McDonnell to Catherine McGrath, wherein the said McDonnell reserved or excepted certain rights in the property conveyed. This is the only point in issue under the pleadings. Said McDonnell was a Catholic priest, and Catherine McGrath was his sister and the former wife of Edward McGrath, one of the defendants. On April 10, 1895, Father McDonnell owned a farm and some land in the town of Poultney, bordering on Lake St. Catherine. On that date he conveyed the major part of this property to his sister as a gift, reserving about fifteen acres abutting on the lake, on which he had for several years maintained a summer cottage. After the reservation of this tract by metes and bounds the deed

proceeds: "Reserving also the right to maintain all the avenues already existing on the said conveyed premises as they are now located, and at. a uniform width of fifty feet, the center line of said avenues always to remain midway between the lines of shade trees as they exist at the time of this conveyance, along said avenues; also the right to care for, improve, or to remove any and all of said trees at will."

It is not contended but that the so-called reservations are, in contemplation of law, exceptions, and we so treat them, though speaking of them as reservations, following the language of the deed.   The plaintiff, who is a nephew of Father McDonnell, owns the reserved premises, having acquired title thereto under his uncle's will.   The defendants own or occupy cottage lots, with summer cottages thereon, situated on the shore of Lake St. Catherine, in the vicinity of the plaintiff's land, within the tract conveyed to Catherine McGrath.   This controversy arises over a roadway leading along the shore between the defendants' cottages and the lake.   The plaintiff claims the right to use this roadway for access to his premises by virtue of the reservation in the deed, which the defendants deny, and have resisted by placing obstructions therein.

Much evidence was received, as the chancellor states in the findings, "for the purpose of obtaining light on the then existing conditions concerning the property in question at the date of the deed."   For the most part the exceptions argued are addressed to the findings based on such evidence.   From the findings not excepted to the following facts appear:   There is a summer cottage, with a boathouse, barns, and ice house, on the premises now owned by the plaintiff, which are occupied during a portion of the year.   The premises were so used by Father McDonnell at the time of the conveyance in 1895, and had been from as early as 1882.   The premises of both the plaintiff and defendants are situated in a wooded tract on the east shore of the lake.   There is an open pasture between this woodland and the public highway.   For many years a boathouse was located on the shore of what is now the plaintiff's land from which boats were let.   Picnics were frequently held in the grove on the lake front.   People going to the lake from the highway usually left the main road at a certain barway, but went in various places across the pasture to a point at the woods some distance south of the plaintiff's land, thence by a more or less

well-defined roadway or trail in a westerly direction to the lake, and thence northerly along the shore, onto what is now the plaintiff's land. This travel was wholly over land then owned by Father McDonnell. There was also a trail leading from Father McDonnell's cottage across the land now owned by the plaintiff, in a more direct line to the highway. About 1882 Father McDonnell made certain road improvements. He worked the last named roadway from his cottage to the highway, and set out a line of maple trees on each side of the way across the pasture. The portion of the roadway between what is now the plaintiff's land and the highway is referred to in the evidence and findings as "Maple Avenue." At the same time he worked a road across the pasture from the barway referred to above to the point where the more southerly roadway or trail entered the woods, which he lined with a double row of balsams on either side. This piece of road is referred to in the evidence and findings as "Balsam Avenue." These two so-called avenues are nearly parallel and from six to eight hundred feet apart. He also worked a cross-road from Balsam to Maple Avenue in the pasture, near the edge of the woodland, along which trees were set out. These three roads through the pasture were turnpiked midway between the rows of trees that had been set out, which are "almost exactly" fifty feet apart along Balsam and Maple Avenues.

No question is made but that these three worked roads are included in the reservation. The plaintiff claims that the reservation extends to the roadway or trail leading from the junction of Balsam Avenue and the crossroad to Maple Avenue, through the woodland around by the lake shore, to the west end of his land. This is referred to in the findings as the "Lake Shore Road." The precise question is whether, under the reservation, the plaintiff has an easement over the lake shore roadway from Balsam Avenue to and from his land, or is restricted to the more direct route by the crossroad to Maple Avenue, and thence over his own land to his cottage.

Respecting the character and the use then made of the lake shore road the following additional facts are found: A short time after the work was done on Balsam and Maple Avenues a hotel was built near the lake front on land now owned by some of the defendants. This hotel was owned by other parties, subject to a mortgage held by Father McDonnell. It was destroyed

by fire, and the title to the land came back to Father McDonnell previous to 1895. When the hotel was in operation, the road from Balsam Avenue around by the lake shore to the hotel, and thence by way of Father McDonnell's cottage to Maple Avenue, was kept in fairly good condition and was worked somewhat each year. It was fairly level until it reached what is now the plaintiff's land, but from that point to the cottage there was a sharp rise. Travel to the cottage and to the hotel was accustomed to go over either route, going in one way and out the other. No work of any great extent was put upon the portion of the way now in controversy, and it wound about more or less to avoid bad places and trees. At times there was considerable travel over it. When Father McDonnell built his cottage, most of the lumber and other freight was hauled over the lake shore road, but some of it came in the other way. Both before and after the deed to his sister, Father McDonnell usually went to and from his cottage by the Maple Avenue route, which was shorter; but he used the lake shore road somewhat. The same was true of the plaintiff, after he acquired title, until this controversy arose in 1911. Previous to that time the right to go either way was not questioned. The cottage lots through which the lake shore road passes were sold off, and cottages erected thereon after the deed of 1895. The roadway is for the most part through woodland. The trees along the way are irregular in size and location, and evidently not set out, but of natural growth. There are not now, and the chancellor was unable to find from the evidence that there ever had been, any lines of shade trees along any part of it. In places large trees grow so close to the traveled path that there is barely room for a team to pass between them, while in other places the open space is much more than fifty feet.

[1, 2]  It is not claimed, and there is nothing in the findings to suggest, that the evidence disclosed any latent ambiguity in the deed. This being so, the language of the reservation is to be interpreted in connection with and in reference to the purpose of the parties and the nature and condition of the subject-matter of the reservation at the time the deed was executed, as disclosed by the findings. Its meaning is a question of law, and the intent cannot be altered by evidence or findings of extraneous circumstances; but the understanding of the parties must be deemed to be what the instrument thus interpreted de-

clares. *Vermont Marble Co.* v. *Eastman,* 91 Vt. 425, 444, 101 Atl. 151.

[3]   The chancellor ruled, and we think properly, that the reservation gave the plaintiff no rights over the roadway in dispute.   The findings relating to the character of the road are fairly descriptive of a trail through woodland in its natural state, and not of an avenue, as the term is ordinarily used and understood.  One of the accepted definitions of an avenue is any broad passageway bordered on each side by trees.   Webster's New Inter. Dict.   While the word does not necessarily imply a roadway with shade trees set out in regular order on each side, it is very properly applied to such a road, and describes it accurately.   But in the case in hand the question does not rest upon the mere definition of the word "avenue."   The language of the whole reservation must be taken together, and when so considered the intention of the grantor is too manifest to admit of any doubt.   The right reserved was to *maintain* all the existing avenues on the premises conveyed, as then located, at a uniform width of fifty feet, the center line of said avenues always to *remain* midway between the lines of shade trees as they then existed along the avenues.   The necessary implication is that the roadways referred to as avenues were of a uniform width of fifty feet, and were bordered by a line of shade trees on either side equidistant from the center of the road.   As we have seen, the roadways that are conceded to be within the reservation fully answer these requirements in every particular, while they are entirely lacking in the disputed roadway.   It had no definite limits on the ground as to width, and nothing that could even be tortured into lines of shade trees situated anywhere, to say nothing of their being equidistant from the center of the road.   The mere convenience of the additional means of access to his cottage afforded by the lake shore road is not enough to create any doubt concerning the grantor's intention, when we consider the character and location of the several roads and the use that he had previously made of them.   Under the construction given to the deed he reserved the best and most convenient means of access, and parted with a way little used and of doubtful utility.

We have arrived at the result reached without considering the findings excepted to.   The requests for findings that were not complied with, presented by the exceptions, raise no ques-

tion that would affect the construction of the deed. It would serve no good purpose to rehearse the exceptions in detail. It is enough to say that in no event do they show harmful error; for, if the findings contained all that the plaintiff asked to have appear, the result would be the same. The requested findings would either be wholly immaterial, being extraneous circumstances improper to be considered in construing the language of the reservation, or of too little significance to raise any doubt as to the intention expressed by the language of the deed.

No claim of a prescriptive right of easement in the way is available, if for no other reason, because it is wholly outside the case made by the pleadings.

*Decree affirmed and cause remanded.*